# EXHIBIT D

**COPY**

Filed 1/31/06

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

**FILED**
JAN 3 1 2006
Court of Appeal - First App. Dist.
DIANA HERBERT
By_____

THE PEOPLE,

    Plaintiff and Respondent,

v.

BRYANT EUGENE DAVIS,

    Defendant and Appellant.

A107183

(Alameda County
Super. Ct. No. 143935A)

DOCKETED
SAN FRANCISCO
FEB 0 1 2006
By__ D. VELASCO
No._____

The sole issue before us is whether defendant Bryant Eugene Davis validly waived his right to appeal from his conviction of second degree robbery. We conclude that the record establishes a valid waiver, and accordingly, this appeal is dismissed.

### FACTUAL AND PROCEDURAL BACKGROUND

Davis was charged with murder committed in the course of a robbery, and second degree robbery. The information also alleged that he had eight prior felony convictions and he had served five prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). After a trial, the jury convicted Davis of second degree robbery, but no verdict on the murder count was reached. The court declared a mistrial and directed a new trial on the murder count.

On May 21, 2004, before the scheduled retrial, the parties formalized on the record a negotiated agreement resolving the matter. Davis agreed to a sentence of 10 years on the robbery conviction, which included an aggravated term of five years plus

1

one year enhancements for each of five prior prison terms,[1] and a waiver of his right to be sentenced by the trial court that had adjudicated at the earlier trial. In exchange for dismissal of the murder charge, Davis waived his right to appeal his robbery conviction.[2]

Immediately before sentencing on July 9, 2004, Davis unsuccessfully moved for the appointment of new counsel under *People v. Marsden* (1970) 2 Cal.3d 118. During the hearing, Davis complained about his counsel's conduct before and during the trial, and that his counsel had not properly advised him of his appellate rights. According to Davis: "[M]y counsel told me to take ten years because I've got a whole lot of prior convictions. When I asked him if I took ten years would that affect my appeal action, he said no." Davis then claimed that he did not understand when the court had asked him if he gave up his right to appeal, but his counsel told him to just say, "yes," and it was not until Davis returned to his jail cell that he learned that he had given up his right to appeal. The court asked defense counsel to address Davis' contention that he was not informed about his right to appeal or waiving that right. Defense counsel replied, "The Judge asked him if he waived the right. It is my belief

---

[1] Davis had previously admitted to five prior prison terms.

[2] The colloquy read: "THE COURT: I understand there is a negotiated resolution of the entire Information in this matter, whereby Mr. Davis would agree to the Court sentencing him to ten years in state prison, which would be the aggravated term of five years for the robbery, plus one year for each of the prior prison commitments on the five felony prior convictions that he admitted, for a total of ten. And he would waive his right to be sentenced on the robbery by [the original trial judge]. [¶] [DEFENSE COUNSEL]: Yes. [¶] THE COURT: In terms of the understanding, I would sentence him to the ten years, and the murder charge and any other charges I haven't referred to will be dismissed. [¶] Is that your understanding, [defense counsel]? [¶] [DEFENSE COUNSEL]: Yes. [¶] THE COURT: Mr. Davis, is that your understanding? [¶] DEFENDANT DAVIS: Yes. [¶] THE COURT: [Trial prosecutor], is that your understanding? [¶] [TRIAL PROSECUTOR]: Also waive all of the appellate rights on the trial. [¶] THE COURT: That's my understanding as well. [Defense Counsel]? [¶] [DEFENSE COUNSEL]: Yes. [¶] THE COURT: Mr. Davis? [¶] [DEFENSE COUNSEL]: He understood he waived it at this point. [¶] THE COURT: Is that right? [¶] DEFENDANT DAVIS: Yes."

that Mr. Davis understood what he was waiving. I certainly did not tell him it made no difference. At that time he was complaining about my competence or lack of it. I said you can reach my competency by writ of habeas corpus in any instance." Defense counsel also explained that after the hung jury on the murder charge, the District Attorney "chose not to proceed with [the murder charge]. They did then inform [Davis] that he was waiving his right of appeal and he agreed. [¶] I certainly didn't mislead him as to what an appeal is, though I did suggest since the thing he was complaining about was my competency that that had to [be] reached by the writ of habeas corpus, as I understand the law."

At the sentencing proceeding, Davis moved to withdraw his waiver of his right to appeal. When the court asked if there were any grounds for the request, defense counsel explained that Davis claimed that counsel had misled him about the meaning of the waiver of his appellate rights, and that when Davis left the courtroom, he realized what he had done. In response to the court's question, defense counsel stated that he had not deliberately misled Davis "but, obviously, he's the only person who knows his state of mind. My recollection is that the [c]ourt discussed it." The court agreed with defense counsel, stating: "I specifically discussed the issue with Mr. Davis, so I'm not sure what the confusion would have been. [The trial prosecutor] raised it. You indicated that that was your understanding, [defense counsel]. And then I asked Mr. Davis whether that was his, and he said, 'yes.' " The court denied Davis' request to withdraw the waiver of his appellate rights and imposed the negotiated sentence. Davis filed a timely appeal.[3]

---

[3] After perfecting this appeal, Davis filed a petition for a writ of habeas corpus challenging his sentence and his waiver of his right to appeal, which we have disposed of by a separate order. Additionally, we have denied Davis' motion to consolidate the petition for a writ of habeas corpus, *In re Davis*, A112158, with this appeal, by separate order.

3

## DISCUSSION

"To be enforceable, a defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary. [Citations.] . . . The voluntariness of a waiver is a question of law which appellate courts review de novo. [Citation.]" (*People v. Panizzon* (1996) 13 Cal.4th 68, 80.) We conclude that the record does not support Davis' argument that an oral advisement by the trial court and/or an executed written waiver is necessary to uphold his waiver of his right to appeal.

While a written waiver is some evidence that a waiver of a right to appeal is valid, we have found no case that "requires a writing, and we see no reason why such a requirement should be imposed." (*People v. Berkowitz* (1995) 34 Cal.App.4th 671, 678.) Additionally, while Davis argues that "[i]n most cases, for a waiver of appellate rights to be enforceable, a court must orally admonish the defendant regarding the right he is relinquishing," the issue of whether an oral admonishment is warranted depends upon the circumstances of the case. (*People v. Panizzon, supra,* 13 Cal.4th at p. 84.)

In support of his argument that a signed waiver form and/or an oral advisement by the trial court was required in this case, Davis primarily relies upon *People v. Rosso* (1994) 30 Cal.App.4th 1001. In that case, the reviewing court held that Rosso's waiver of his appellate right was invalid because although Rosso had agreed he had discussed his constitutional rights with his counsel, the only mention of appellate rights was by the trial court when it asked the defendant whether he waived his constitutional rights *and his right to appeal*. (*Id.* at p. 1006.)

Unlike *Rosso*, in this case, the waiver of the right to appeal was not added by the trial court, nor was it tangential to the parties' agreement. After the trial prosecutor explicitly referred to Davis' waiver of his appellate rights, the recitals dealt directly with the intended waiver. Davis' "affirmative response, which both referred to the import of the court's question and adopted [defense] counsel's statement, was a waiver by language" of the right to appeal. (*People v. Evanson* (1968) 265 Cal.App.2d 698, 701.) At that time, Davis did not object or otherwise ask for clarification. According

4

to Davis, had the trial court advised him and questioned him as to whether he understood the waiver, possible confusion between habeas corpus relief and appeal rights might have been cleared up. However, "where a defendant is represented by counsel it is to be expected that counsel will intentionally . . . advise waiver of . . . certain . . . rights from time to time in his choice of defense tactics. It is not necessary that whenever such a tactical waiver occurs the court interrupt the proceedings to advise defendant of the right which is to be waived and question him to ascertain whether the waiver is made with full appreciation of the consequences." (*Id.* at pp. 701-702.) The colloquy at the May 21, 2004 hearing between counsel, Davis, and the court did not raise any question as to Davis' lack of comprehension of his rights or the consequences of the negotiated agreement.

In sum, the validity of Davis' waiver of his right to appeal is not "open to speculation," as Davis argues. The record shows that Davis' waiver was knowing, intelligent and voluntary. Davis' acknowledgements at the May 21, 2004, hearing, as well as the colloquy during the July 9, 2004 *Marsden* hearing, indicate that he knew that the waiver of the right to appeal was part of the negotiated agreement relating to the prosecutor's decision not to retry him on the murder count. Davis does not argue that he did not understand that he was receiving a benefit in return for his waiver of his right to appeal. "Although a defendant may not know the specific nature of the appeal he is giving up in return for dismissal of pending charges, if he understands he is receiving a benefit in return, his decision to enter into the agreement reflects a highly rational judgment . . . ." (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1661.)[4] The benefits of the agreement were obvious: Davis gained immunity from criminal prosecution for murder in return for waiving his right to appeal the robbery conviction,

---

[4] We agree with Davis that the issue addressed by the *Marsden* court was whether he was entitled to new counsel, and not whether his waiver of his right to appeal was valid. Consequently, we place no weight on the *Marsden* court's remarks that given Davis' criminal history it was difficult to believe that he did not understand his appellate rights.

which appeal he might well have lost. Davis does not allege that he entered into the agreement as a result of duress, coercion or prosecutorial misconduct. He did not move nor does he now seek to set aside the negotiated agreement, but only his waiver of the right to appeal. "Under these circumstances [Davis] is bound by the whole agreement and is not free to repudiate its unfavorable terms. [Citations.]" (*People v. Charles* (1985) 171 Cal.App.3d 552, 562.)

## DISPOSITION

The appeal is dismissed.

_____
McGuiness, P.J.

We concur:

_____
Parrilli, J.

_____
Pollak, J.

RECEIVED ATTORNEY GENERAL 2006 JAN 31 PM 3:54 CA. DEPT OF JUSTICE SAN FRANCISCO DOCKET UNIT